KEY WEST WHARF & COAL COMPANY AND JEANETTE L. MUR-
     PHY, *Appellants*, v. LOUISA PORTER, *Appellee*.

FORECLOSURE OF MORTGAGE—DEMURRER TO WHOLE BILL—
     SUBROGATION—FORECLOSURE DE NOVO WHEN NECES-
          SARY PARTIES HAVE BEEN OMITTED FROM FIRST
               FORECLOSURE—USURY CANNOT BE SET UP AS
                    A DEFENSE TO A FORECLOSURE SUIT BY A
                    PARTY WHO HAS ASSUMED THE PAY-
                         MENT OF THE MORTGAGE, AND SUBSE-
                              QUENT PURCHASERS THROUGH HIM
                                   ARE LIKEWISE ESTOPPED TO
                                        MAKE SUCH DEFENSE—
                                             ESTOPPEL.

1.   A general demurrer to the whole bill for want of equity should be overruled if there is any ground for equitable relief in the bill, and this even if there are any number of grounds of special demurrer to parts of the bill.

2. The purchaser of property at a foreclosure sale for the full amount due on the decree of foreclosure, when, for any reason the foreclosure proceedings are imperfect, irregular or void, becomes subrogated to all the rights of the mortgagee in and to such mortgage and the indebtedness that it secured, and becomes thereby virtually an equitable assignee of such mortgage and of the debt that it secured, with all the rights of the original mortgagee, and becomes entitled to an action *de novo* for the foreclosure of such mortgage against all parties holding junior encumbrances or the legal title, who had been omitted as parties to such original foreclosure proceedings under which he bought.

3. Where a mortgagee holds two or more mortgages upon the same premises they should both be set out in the complaint and foreclosed in the same action, only one suit to foreclose both being proper.

4. A subsequent purchaser who expressly assumes the payment of prior existing mortgages upon property that he buys, as part of the purchase price for such property, is estopped to defend against the foreclosure of such mortgage either upon the ground of usury or upon the ground of failure or want of consideration therefor, or upon any other ground.

5. A party claiming title under one who is estopped, will also be bound by the estoppel.

6. The courts in foreclosure proceedings have no power to release any part of the property from the lien of the mortgage by affixing thereto a sum, less than the entire sum of the mortgage, which when paid shall release or redeem such part from the lien of the mortgage.

Appealed from the Circuit Court for Monroe County.

*Alex St. Clair-Abrams,* for Appellants;

*W. Hunt Harris,* for Appellee.

29—Vol. 63.

STATEMENT.

Louisa Porter, the appellee, on the 22nd day of March, 1910, filed her bill in equity in the Circuit Court of Monroe County for foreclosure of two mortgages against George W. Allen, as administrator, *de bonis non* of the estate of John J. Philbrick, deceased, Jeannette L. Murphy, as Executrix of the last will and testament of Charles A. Murphy, deceased, and in her own right, Helen B. Sturges and Edward E. Sturges, her husband, Elizabeth Murphy, Marjorie Murphy, Riginald Murphy and Gerard Murphy, George Lewis, Key West Wharf and Coal Company, a corporation under the laws of New Jersey, William W. Shaw, Hester N. Laflin, Mollie S. Laflin in her own right and as administratrix of the estate of John P. Laflin, and all parties claiming interests under Charles A. Murphy, deceased, and John P. Laflin, deceased, and Albert S. Laflin, deceased, or otherwise. The bill in brief sets up the following facts: That John J. Philbrick, late of Monroe county, deceased, being then the owner of certain described real estate fronting on the water in the City of Key West, and being then indebted to George Lewis in the aggregate sum of Eighteen Thousand Dollars, did on the 17th day of October, A. D. 1891, make and deliver to the said Lewis his three several promissory notes, one of them for $10,000, payable three years after date; another of them for $5,000, payable four years after date, and the remaining one of them for $3,000, payable five years after its date, all of them bearing interest at the rate of ten per cent per annum, payable annually, and on the same date, to secure the payment of said indebtedness, the said Philbrick and his wife, Mary A. Philbrick, did execute and deliver to the said Lewis their certain mortgage, covering the following described lands, tene-

ments and hereditaments, situated, lying and being in the county of Monroe, State of Florida, to-wit: All that piece or parcel of land situate, lying and being in the city of Key West and known on the map of said city delineated by William A. Whitehead as the Westerly part of Lot number One (1) ,in square number Three (3), bounded easterly by a street called Water or Wall Street, thirty feet wide and running parallel with Front Street and one hundred (100) feet from it, Southerly by part of Lot Number Two (2), in same square, Westerly by the Waters of the Bay and Northerly by Duval Street. That said mortgage was duly executed and acknowledged, and was duly recorded in the public records of Monroe county on the 29th of October, A. D. 1891. That the said John J. Philbrick afterwards on the 14th day of September, A. D. 1897, died intestate leaving his widow, the said Mary A. Philbrick, as his sole heir at law. That on the 18th day of September, 1897, one H. L. Stricker was duly appointed and qualified as administrator of the said John J. Philbrick, deceased, and after administering said estate up to the 2nd of September, 1898, was duly discharged, and that on the 1st of August, A. D. 1899, the defendant, George W. Allen, was duly appointed and qualified as administrator *de bonis non* of said estate. That the said John J. Philbrick during his life time, notwithstanding the said three notes had become due, paid no part of the principal sum mentioned therein, but that the interest on said principal sums was paid up to the 17th day of October, 1901, and that there now remains due and unpaid the principal sum of $18,000, mentioned in said notes and mortgage, with interest thereon at the rate of ten per cent per annum from the 17th day of October, A. D. 1901. That the said John J. Philbrick during his life time, joined by his said wife, Mary A.

Philbrick, on the first day of March, 1895, executed and delivered a mortgage deed on the hereinbefore mentioned and described real estate to Eduardo H. Gato, to secure unto him the said Gato the payment of a promissory note for the sum of $35,000, payable within five years from the date thereof, March 1st, 1895, with interest from date at the rate of six per cent per annum. That no part of said principal sum and interest thereon has been paid. That said last mentioned mortgage deed was on the 1st day of March, 1895, duly recorded in the public records of Monroe county, Florida. That on the 6th day of April, 1898, the said Mary A. Philbrick, the sole heir at law of the said John J. Philbrick, conveyed in fee simple the said mortgaged lands and premises to one H. L. Stricker. That the said H. L. Stricker on the 17th day of November, 1898, conveyed the same mortgaged lands in fee simple to John P. Laflin and Albert S. Laflin. The said John P. Laflin and Albert S. Laflin, joined by their respective wives, on the 24th day of November, 1900, conveyed in fee simple a part of the said described real estate to W. J. H. Taylor. That in the deed of conveyance executed and delivered to the said W. J. H. Taylor, and accepted by him, there was contained the following provision: "Subject, however, to mortgages on all of the foregoing premises aggregating in amount $53,000, which the said W. J. H. Taylor assumes to pay." That the mortgage of the said George Lewis for $18,000, and of the said Eduardo H. Gato for $35,000, aggregating $53,000, were the only mortgages existing on said date embracing said real estate, and the said W. J. H. Taylor as a part of the purchase price agreed to pay the same. That on the 24th day of November, 1900, the said W. J. H. Taylor being indebted to the said John P. Laflin and Albert S. Laflin in the sum of $22,500, made and delivered his certain promis-

VOL. 63, JANUARY TERM, 1912.       453

Key West Wharf & Coal Co. *et al.* v. Porter—Statement of Case.

sory note, and, joined by his wife, executed and delivered a mortgage deed to secure the payment of said note, covering only the same real estate that had been conveyed to him as aforesaid by the said Laflins, which mortgage was duly recorded in Monroe county on November 27th, 1900. That on said 24th day of November, 1900, the said W. J. H. Taylor, being indebted to the said Mary A. Philbrick in the sum of $3,000, made and delivered to her his promissory note for that sum and executed and delivered to her a mortgage-deed to secure the same, embracing only that part of the said real estate that had been conveyed to him by the said Laflins, which mortgage was duly recorded on the public records of Monroe county on the 27th of November, 1900. That afterwards, on the 5th day of March, 1902, the said W. J. H. Taylor and wife executed and delivered a mortgage deed on said land to the First National Bank of Key West, Florida, to secure unto it the payment of $6,500, which mortgage was duly recorded in the public records of Monroe county. That on the said 5th day of March, 1902, the said W. J. H. Taylor agreed to sell to the Key West Wharf and Coal Company, a corporation, the land that he had purchased from the said Laflins on condition and as a part of the purchase price, that the said The Key West Wharf & Coal Company would assume to pay the mortgages existing on said real estate aggregating $85,000. That on said 5th day of March, 1902, the said real estate was encumbered with the following mortgages, viz: George Lewis, $18,000; E. H. Gato, $35,000; J. P. and A. S. Laflin, $22,500; Mary A. Philbrick, $3,000; The First National Bank of Key West, $6,500. That on the 5th day of March, 1902, the said W. J. H. Taylor, joined by his wife, executed and delivered to the said Key West Wharf and Coal Company (incorporated) a deed convey-

ing the real estate that had theretofore been conveyed to him by the said Laflins, subject, however, to mortgages aggregating $85,000, on which $85,000 remains unpaid, which the said party of the second part (The Key West Wharf and Coal Company) hereby assumes and agrees to pay. That said deed was duly recorded on March 10th, 1902, in the public records of Monroe county. That on the 29th day of November, 1902, the said John P. Laflin and Albert S. Laflin filed their bill in the Circuit Court of the United States, Fifth Judicial Circuit in and for the Southern District of Florida, to foreclose the said mortgage given by the said W. J. H. Taylor to secure the payment of the said promissory note for $22,500, and that in said suit the said W. J. H. Taylor, The Key West Wharf and Coal Company, Mary A. Philbrick, W. R. Kerr and the First National Bank of Key West were named as defendants, but that the said George Lewis and Eduardo H. Gato were not made defendants and were not parties to said suit. That in said suit a consent decree of foreclosure was rendered on the 11th day of November, 1903, whereby the said real estate mortgaged by the said Taylor to the said Laflins was decreed to be sold by George W. Allen as Special Master at public sale to the highest bidder for cash to satisfy said decree. That on the 7th day of December, 1903, the said described real estate was sold by the said George W. Allen, Special Master, under said decree to Charles A. Murphy for $2,500, the Master previous to said sale and at the time of selling the same gave notice of all incumbrances on said real estate. That on the 15th day of December, 1903, the said sale to the said Murphy was confirmed by an order and decree of said court, and the said Master thereupon delivered to the said Murphy a deed for the above described land, which deed was immediately thereafter duly recorded in

the public records of Monroe county—all of whom took titles to said property subject to the liens of the said mortgages of the said George Lewis and the said Eduardo H. Gato. That the said Charles A. Murphy immediately thereafter entered into the open, notorious and exclusive possession of that portion of the real estate mortgaged to the said Lewis and Gato that was purchased by him at the said Master's sale, and was in possession thereof on the 27th day of February, 1906.

On information and belief the bill charges that John P. Laflin died on the 24th day of February, 1903, leaving Mollie S. Laflin, his widow, and Helen P. Laflin, his daughter, and certain other heirs and claimants, the names and places of residence of whom are unknown to complainant, and that on the —— day of —————, A. D. ——, the said Albert S. Laflin departed this life, leaving surviving him Hester N. Laflin, his widow and certain other heirs and claimants, the names and places of residence of whom are unknown to complainant. That on the 16th day of February, 1907, the defendant, William Shaw, acquired by purchase all the right, title and interest of the said Helen P. Laflin in and to said real estate by a deed of conveyance which is duly recorded in the public records of Monroe County. That on the 27th day of February, 1906, the said George Lewis filed his bill in the Circuit Court of Monroe County for the foreclosure of the mortgage made to him by the said John J. Philbrick, against George W. Allen, as administrator *de bonis non* of the estate of said John J. Philbrick, deceased, and against Mollie S. Laflin, as the administratrix of the estate of John P. Laflin, deceased, and against Mollie S. Laflin, and Helen P. Laflin as heirs at law of said John P. Laflin, deceased, and against Albert S. Laflin, Hester N. Laflin, Eduardo H. Gato and Charles A. Murphy, and

by amendment against William W. Shaw, who, pending the said suit, acquired and became the owner of the interest of Helen P. Laflin. That on the 26th day of January, 1909, a final decree of foreclosure was rendered in said suit for the sum of $31,095, for principal and interest due on such mortgage, and for the further sum of $3,500, for attorneys' fees for such foreclosure, the said mortgage having a provision for the payment of such attorneys' fees, which said sums the said decree required to be paid on or before the 29th day of January, 1909, and in default of such payment all the parties defendant and all persons claiming under then were barred and foreclosed of all equity of redemption in and to said mortgaged premises, and all of said mortgaged property as decreed to be sold at public sale after due advertisement, for cash to the highest bidder by Herbert S. Phillips as Special Master. That said sale was made in accordance with said, and that at said sale your oratrix was the highest and best bidder for all of said property for the sum of $35,000. That the said special master made report of said sale to the court in compliance with said decree, and said sale was confirmed by the court, and that your oratrix paid to the said special master the amount of her said bid, *viz*: $35,000, and in pursuance of said decree and of the order confirming said sale, the said Special Master executed and delivered to your oratrix a deed of conveyance to the whole of said mortgaged premises, which deed was duly recorded on the 15th day of March, 1909, in the public records of Monroe county, and your oratrix at once, on the 16th day of March, 1909, entered into possession of the said real estate and is now in possession thereof at the time of the filing of this bill. That on the 10th day of April, 1908, the said Charles A. Murphy departed this life, leaving a certain last will and

testament dated the 11th day of May, 1899, which said last will was on the 24th day of April, 1908, duly admitted to probate in the State of New York, and a certified copy thereof and of the testimony upon which it was admitted to probate and of the letters testamentary were duly recorded in the office of the County Judge of Monroe county on the 10th day of March, 1910. That by said will the said Charles A. Murphy devised all of his estate, both real and personal, to his wife, Jeannette L. Murphy, and named her as executrix of his said will, and that she qualified as such executrix. That the said Charles A. Murphy left him surviving Jeannette L. Murphy, his widow, and the following-named children his heirs at law, *viz*: Helen B. Sturges, Elizabeth Murphy, Marjorie Murphy, Reginald Murphy and Gerald Murphy, and certain other heirs and other claimants, the names and places of residence of whom are unknown to your oratrix. That neither the said Jeannette L. Murphy as executrix of the last will of the said Charles A. Murphy, nor in her own right, nor any of said children heirs or other claimants under the said Charles A. Murphy, deceased, were ever served with process, actual or constructive, in said cause of George Lewis against George W. Allen, administrator *de bonis non* et al., nor did said executrix of the will of said Charles A. Murphy, nor in her own right, nor any of said children or other heirs, or other claimants under the said Charles A. Murphy, or either of them, appear in said cause, nor were they represented in said cause by counsel or otherwise; and this Honorable Court did not have, and never has had, jurisdiction of said parties, or either of them. That your oratrix is advised that said decree of foreclosure of the said Lewis mortgage did not affect the said title and equity of redemption in the heirs and other claimants under the said Charles A. Murphy and their

458     SUPREME COURT OF FLORIDA.

Key West Wharf & Coal Co. *et al.* v. Porter—Statement of Case.

said title and equity of redemption were in no way affected by said proceedings and decree of foreclosure, and did not pass to your oratrix by said Master's sale and deed in pursuance thereof, and that as to such parties such proceedings were utterly without effect to satisfy the said notes and mortgage of the said George Lewis, and as to them the same remains in full force and effect as though no such proceedings had been had. All of which was unknown to your oratrix until after she had bid off the said property at the said Master's sale, and had paid part of the purchase money. That by virtue of law your oratrix by reason of her purchase at said Master's sale became subrogated to the rights of the said George Lewis in and to said mortgage and the indebtedness that it was given to secure. That on the first day of March, 1895, the said John J. Philbrick, being indebted to the said Eduardo H. Gato in the sum of $35,000, made and delivered to the said Gato his certain promissory note in writing for said sum, payable five years after its date, with interest at the rate of six per cent per annum, payable semi-annually. That to secure the payment of said note the said Philbrick, together with his said wife, Mary A. Philbrick, did on the 1st day of March, 1895, execute and deliver to the said Eduardo H. Gato a mortgage deed covering the same property that had theretofore been mortgaged to said George Lewis. That said mortgage was conditioned for the payment of said note for $35,000 and interest, and covenanted to pay a reasonable attorneys' fee for the collection thereof by foreclosure or otherwise. That the said John J. Philbrick during his life time, notwithstanding said note and mortgage to said Gato had become due, paid no part of the principal thereof, and that no part of said principal thereof has been paid since the death of said John J. Philbrick, and that there remains due and

unpaid on the said promissory note and mortgage the whole of the principal sum of $35,000, with interest thereon at the rate of six per cent per annum from the 1st day of March, 1895. That on the 15th day of March, 1909, the said Eduardo H. Gato for a valuable consideration by a certain instrument in writing conveyed to your oratrix all of his right, title and interest in and to the said indebtedness and note for $35,000 and interest thereon, and the mortgage given by the said Philbrick to secure the same, which assignment was duly recorded in the public records of Monroe county on the 16th day of March, 1909. That neither the said John J. Philbrick in his life time, nor any other person for him, has paid to the past or present holder of said note and mortgage the money therein mentioned, and the same remains due and unpaid.

It is further alleged on information and belief that all of the said defendants have or claim to have some interest in said mortgaged premises or some part thereof, as purchaser, mortgagee, judgment creditor or otherwise, which interest, if any, has accrued subsequent to the lien of said mortgage of the said George Lewis and the said mortgage of the said Eduardo H. Gato, and is subject thereto. That all of said defendants are over the age of twenty-one years, except Helen B. Sturges, Elizabeth Murphy, Marjorie Murphy, Reginald Murphy, and Gerard Murphy, who are minors. The bill prays that an accounting may be taken of the full amounts due for principal and interest upon the notes and mortgage made by the said Philbrick to the said George Lewis, to whose rights the complainant was subrogated by reason of her payment of such notes and mortgage through her purchase of the property at the foreclosure sale under the ineffectual decree foreclosing same, and of the amount due for principal and inter-

est upon the note and mortgage made by said Philbrick to Eduardo H. Gato, which were assigned by said Gato to the complainant, and for an attorneys' fee for the foreclosure of the said mortgage to the said Gato. And that the defendants or such of them as are liable thereto be required to pay to complainant the amount so found to be due for principal and interest on both of said mortgages, and the costs, charges and expenses of foreclosing the said Gato mortgage, including a reasonable attorneys' fee for the foreclosure of said Gato mortgage, and that in default of such payment the whole of said mortgaged property be sold to satisfy the same, and that both the said Lewis and Gato mortgages may be foreclosed and all of said defendants, and all persons claiming any interest by, through or under them or any of them subsequently to the record of both of said Lewis and Gato mortgages may be forever barred and foreclosed of all equity of redemption of, in or to the mortgaged property and every part thereof. The bill prays for the appointment of a guardian *ad litem* for the said minor defendants, for subpoena to the defendants, and for general relief. Oaths to the answers are expressly waived by the bill. Order for publication to the absent defendants is also prayed for, and the bill is sworn to by the complainant.

George W. Allen, as administrator *de bonis non* of the estate of John J. Philbrick deceased, filed an answer admitting all of the material allegations of the bill to be true as therein alleged. The defendant, George Lewis, filed an answer admitting the making and delivery to him by John J. Philbrick of the notes and mortgage as alleged; the foreclosure of same as alleged; the sale of the mortgaged property as alleged under his decree of foreclosure, and the purchase thereof by the complainant, at said sale for the sum of $35,000, and admits the payment

VOL. 63, JANUARY TERM, 1912.        461

Key West Wharf & Coal Co. *et al.* v. Porter—Statement of Case.

by her of the said sum, and the execution to her by the Special Master of a deed to said property, and disclaiming any other or further interest or right in or to the said premises.

The defendants, the Key West Wharf and Coal Company and Jeannette L. Murphy, filed separate demurrers to the whole bill upon identically the same grounds, as follows:

1.  That said bill is multifarious.

2. . That there is a misjoiner of parties.

3.  That all of the defendants, except the Key West Wharf & Coal Company and Jeannette L. Murphy, are improper parties to the bill.

4.  That it appears from the allegations of the bill that under and by virtue of the decree of the Circuit Court of the Sixth Judicial Circuit of Florida all of said defendants, except the Key West Wharf and Coal Company and Jeannette L. Murphy, were and are barred of all right, title interest or equity of redemption in the land described in said bill.

5.  That it appears from the allegations of said bill that the said Louisa Porter, under and by virtue of her purchase of said lands at foreclosure sale, acquired a complete title to said lands subject to the equity of redemption in the defendants, the Key West Wharf and Coal Company and Jeannette L. Murphy.

6.  That a decree in foreclosure is valid, binding and conclusive against all parties properly before the court at the time of the rendition of the decree.

7.  That a bill which makes parties without setting up or alleging an interest in the parties sued is bad on demurrer.

8.  That there is nothing in the bill which sets up that the defendants, Jeannette L. Murphy, executrix of the last

will and testament of Charles A. Murphy; Helen' B. Sturges and Edward B. Sturges, her husband; Elizabeth Murphy, Marjorie Murphy, Reginald Murphy and Gerard Murphy, have any claim or interest in said lands.

9. That the recital of the bill shows that Jeannette L. Murphy as administratrix and the heirs of the said Charles A. Murphy have no interest whatsoever in said lands.

10. That the recital of the bill shows that George W. Allen, administrator *de bonis non* of the estate of John J. Philbrick, deceased, is not a proper party to this suit, having been barred of all equity of redemption by the decree of the Circuit Court in and for Monroe county, Florida, dated January 26th, 1909.

11. That by the recital of the bill it appears that the defendants, William W. Shaw, Mollie S. Laflin, as administratrix of the estate of John P. Laflin, Mollie S. Laflin of her own right and Hester N. Laflin are not proper parties to this suit, having been barred from all equity of redemption by the decree of the Circuit Court in and for Monroe County, Florida, dated January 26th, 1909.

12. That by the recital of said bill it appears that the said Eduardo H. Gato had no right, title and interest in the mortgage executed to him by John J. Philbrick and Mary A. Philbrick, his wife, on the first day of March, 1895, at the time of the alleged transfer and assignment of said mortgage and notes to the said Louisa Porter, he having, under and by virtue of the decree of the Circuit Court in and for Monroe County, Florida, dated January 26th, 1909, been barred and foreclosed of all equity of redemption in said lands prior to the said transfer and assignment to the said Louisa Porter.

13. That the alleged transfer and assignment of the

said mortgage to Eduardo H. Gato not having been made until after the decree of foreclosure, sale under foreclosure, and confirmation of said sale and execution of deed to the said Louisa Porter, the said Eduardo H. Gato, at the time of the alleged transfer and assignment, had no right, title or interest to convey or assign, all of his rights having been extinguished and foreclosed by said decree of foreclosure, sale under said decree, confirmation of sale and execution of deed to the said Louisa Porter.

14.  That the decree of the Circuit Court of the Sixth Judicial Circuit of Florida, in and for Monroe county dated the 26th day of January, A. D. 1909, was and is not null and void as to any of the defendants except the said Key West Wharf and Coal Company and Jeannette L. Murphy; that as to the other defendants said decree was and is final, conclusive and binding.

15.  That the complainant cannot maintain a bill of foreclosure against these defendants, there being no mortgage to foreclose, but can only maintain a bill to extinguish the equity of redemption possessed by these defendants.

16.  That the allegation in the bill that the decree of the Circuit Court of the Sixth Judicial Circuit of Florida in and for Monroe County, dated January 26th, A. D. 1909, is null and void, is a mere conclusion of law and sets up no facts showing, or tending to show, that said decree is null and void.

These demurrers were overruled upon the argument thereof.  A guardian *ad litem* for the minor defendants was appointed by the court, who filed an answer submitting the interests of said minors to the protection of the Court.  The defendants, the Key West Wharf and Coal Company and Jeannette L. Murphy, filed separate but identically the same pleas to the bill, in substance setting

464        SUPREME COURT OF FLORIDA.

Key West Wharf & Coal Co. *et al.* v. Porter—Statement of Case.

up that the complainant knew, when she purchased from Eduardo H. Gato his mortgage and note made to him by the said John J. Philbrick, that the said Gato had been made a party defendant to the bill for foreclosure of the prior mortgage to George Lewis, and that the said Gato had been foreclosed and debarred of all equity of redemption in and to said premises by the final decree of foreclosure of the said prior mortgage of the said George Lewis. That said Gato mortgage had thereby become extinguished as a lien upon said property, and that the complainant as assignee thereof has no right to foreclose the same. That the complainant purchased the said Gato mortgage for a nominal consideration of not exceeding $2,000, and did so for the purpose of doing wrong and injury to the said defendants.

The defendants, the Key West Wharf and Coal Company and Jeannette L. Murphy, filed separate but identically the same answer, in which they in substance admit the execution and delivery of the two mortgages by John J. Philbrick to George Lewis and Eduardo H. Gato at the dates as alleged in the bill, but on information and belief assert that John J. Philbrick never did receive from George Lewis the sum of $18,000 at the time of or subsequent to the execution of said promissory notes. That said notes purported to bear interest at the rate of ten per cent. per annum, and that the said Philbrick received but a trifle over $16,000 on said promissory notes, the said Lewis requiring the said Philbrick to pay one year's interest in advance in addition to paying the sum of ten per cent. per annum, whereby the said Lewis was guilty of usury, and was and is not entitled to recover interest on the promissory notes, and that the said complainant acquired all of her right, title and interest in said Lewis notes and mortgage after the maturity of said notes and

mortgage and acquired the same subject to all the rights and equities of the said Philbrick and of these defendants as successor in title to the mortgaged property. The answers deny that no part of the principal of said Lewis notes had been paid up to the 17th day of October, 1901, as alleged in the bill and that there remained due on that date the full sum of $18,000, with interest thereon from that date at the rate of ten per cent. per annum, but allege that the said Philbrick during his life time paid large sums of money on account of said notes aggregating more than the interest due thereon up to said 17th day of October, 1901. And said answers assert that Charles A. Murphy, from whom the defendant, the Key West Wharf & Coal Company, derived title to said property, paid large sums of money on account of said notes and mortgage, and said answers demand a strict accounting of all payments made by the said Philbrick and the said Charles A. Murphy to the said Lewis, or to authorized attorneys and agents. The answers admit the allegations of the bill as to the conveyance in fee by John J. Philbrick on the 17th day of November, 1898, of the mortgaged lands to John P. Laflin and Albert S. Laflin, and that the said Laflins and their wives conveyed a part of said property to W. J. H. Taylor, subject to the Lewis and Gato mortgages as alleged in the bill, and that W. J. H. Taylor executed a mortgage to said Laflin in the sum of $22,500 on the 24th day of November, 1900, and that on said date the said Taylor executed a mortgage to Mary A. Philbrick in the sum of $3,000 on so much of the property as he had purchaser from the Laflins; and that on the 5th day of March, 1902, the said Taylor executed still another mortgage on his part of said property to the First National Bank of Key West to secure the payment of $6.500.

Said answers admit the foreclosure in the United

States Circuit Court of the Fifth Judicial Circuit in and for the Southern District of Florida, of the mortgage for $22,500 made by said W. J. H. Taylor to the said Laflins, in which foreclosure suit neither the said George Lewis nor Eduardo H. Gato were parties, but the said W. J. H. Taylor, the Key West Wharf & Coal Company, Mary A. Philbrick, W. R. Kerr and the First National Bank of Key West were made parties defendant. That under the decree in such foreclosure suit the property covered by said mortgage was sold by a Special Master, and at the sale was purchased by Charles A. Murphy for the sum of $2,500, subject to the mortgages of George Lewis and Eduardo H. Gato. The answers admit the execution and delivery of the note for $35,000 by John J. Philbrick to Eduardo H. Gato and the mortgage to secure the same, but allege that the said Philbrick never during his life time received the sum of $35,000, as asserted in said promissory note; but that said note was given to said Gato to include the amount due to George Lewis, and that the said Gato either paid a large sum to the said George Lewis, or, for some reason unknown to the answering defendants, failed and refused to pay the same, and that the said Philbrick did not receive but a very small part of the $35,000 mentioned in said promissory note. That on information and belief at the time of the death of said John J. Philbrick in the year 1897 a large part of the total sum of $35,000 mentioned in the promissory note to Eduardo H. Gato had not been paid to the said George Lewis, and that the said Gato did not and never claimed that the said Philbrick was indebted to him in the sum of $35,000. That even if the said mortgage to Gato possessed any vitality or legal or equitable force at the time of the alleged acquirement thereof by the complainant, the same were not assigned to her until long after the

same became due, and that she took the same, subject to all the equities existing between the said Eduardo H. Gato and the said Philbrick and the said Charles A. Murphy after his purchase thereof, and that these defendants are entitled to all the equities existing between the parties and to full credits and deductions therefrom. On information and belief the answers allege that during the life time of said Charles A. Murphy he paid divers sums of money to the said Eduardo H. Gato on account of the balance due on said mortgage and note and that at the time of the foreclosure of said mortgage by George Lewis, there was but a small balance due thereon, and that the sum of $35,000 and interest thereon was not due on said mortgage. The answers further admit the allegations of the bill as to the foreclosure of the Lewis mortgage against the parties as alleged. That in the bill to foreclose said Lewis mortgage the said Eduardo H. Gato was made a party defendant and the mortgage to said Gato was therein set forth. That said bill prayed, among other things, that said defendants therein be required to pay the amount of money decreed to be due the said Lewis, and in default thereof that the mortgaged premises be sold to satisfy the said amount, and in the event of such sale that the defendants therein, including the said Eduardo H. Gato and all persons claiming by, through or under them subsequent to the execution of said mortgage, be barred and forever foreclosed from any equity of redemption in or to said mortgaged property, and that a final decree of foreclosure was rendered therein in conformity to the prayers of said bill. That the said Eduardo H. Gato was duly served with process in said foreclosure suit as a defendant therein, and had notice of the decree of foreclosure, and not regarding his said note and mortgage of any value to him, failed and refused

468        SUPREME COURT OF FLORIDA.

Key West Wharf & Coal Co. *et al.* v. Porter—Statement of Case.

on or before the 29th day of January, 1909, to pay the amount of said decree as required and limited therein, whereby he became barred of all equity of redemption in said property. The answers admit the sale under the foreclosure decree of the said Lewis mortgage and the purchase by the complainant at said sale of all of said property for the sum of $35,500, and that said sale was confirmed by the court. The answers admit that Charles A. Murphy died pending the said foreclosure suit and before final decree therein, and that neither of the answering defendants were made parties to such foreclosure suit. The answers deny that the complainant was not informed at the time she bid in the property at the foreclosure sale of the death pending the suit of Charles A. Murphy, and that neither his executrix, Jeannette L. Murphy, or the Key West Wharf and Coal Company had been made parties to such foreclosure suit, but allege that her attorneys and agents who acted for her in bidding off said property had full knowledge of such facts at the time, and that she was consequently bound by the knowledge of her said agents.

The answers allege that the complainant, with full knowledge of the fact, that neither of the answering defendants had been made parties in the foreclosure suit of the Lewis mortgage, and of the fact that Eduardo H. Gato had been barred and foreclosed of all equity of redemption in the mortgaged premises by said decree of foreclosure of the Lewis mortgage, and the said Gato mortgage had thereby become extinguished and was null and void, by and through her attorneys, and with purpose and intent to wrong, injure and defraud the answering defendants in the premises and to prevent them from redeeming said property for the amount of the decree in the Lewis foreclosure suit, persuaded and induced the

said Eduardo H. Gato for a nominal consideration, which the answers allege on information and belief did not exceed the sum of $2,000, to execute to her a pretended assignment and transfer of the mortgage and note made to him by the said John J. Philbrick, said transfer and assignment being made after the sale of said property under the decree of foreclosure of the Lewis mortgage, and that she did so with full knowledge that the said note to the said Gato was barred by the statute of limitations, and that all of his rights and interest under his said mortgage had been barred and foreclosed by the Lewis decree and by the sale thereunder, and that the said Gato had no right of foreclosure in said premises, but that all of his rights had been extinguished by virtue of said decree. That the complainant on or about the same day recorded in the public records of Monroe county the deed to her from the master at the foreclosure sale and also the pretended assignment to her of the said mortgage from Eduardo H. Gato for the sole purpose of setting up a claim of right in her to foreclose the said Gato mortgage against the said answering defendants, and to prevent them from redeeming the said land for the amount of the decree in favor of George Lewis, she well knowing that said property was not then or now worth the sum and amount of the combined Gato and Lewis mortgages.

The answers further admit that Charles A. Murphy during his life time bought said property for the sum of $2,500, subject to the said Gato and Lewis mortgages, and allege that the said Murphy afterwards paid large sums of money, aggregating $18,000, during his life time to the said mortgagees. That the portion of said land acquired by the said Charles A. Murphy as described in said bill of complaint was and is not worth as much as the Lewis mortgage amounts to, and that this fact was.

well known to the complainant, and that the purpose and object of securing the pretended assignment of the said Gato mortgage was to impose upon these defendants the payment of a sum aggregating far more than the value of the entire property, and to compel these defendants to pay not only the proportionate amount of the mortgages applicable to the portion of the property owned by the defendants, but the entire combined sum of both mortgages, with interest, costs, charges and attorneys' fees.

The answers further assert that although the defendants only own portions of the property covered by the Lewis mortgage, that the said Lewis in his bill for foreclosure failed to advise the court that part of said land was then owned by these defendants and another part by other parties, so that the decree of the court was so worded that these defendants would have been compelled to redeem the entire tract and thus compelled to pay the indebtedness due on the whole; that equity and good conscience required that the approximate value of each tract should have been ascertained and the amount necessary to redeem each tract proportioned between the several separate owners thereof; so that these defendants could have paid their proportion of the amount due on the mortgage and not have been required to pay the entire sum of the decree, although owning only a part of the mortgaged land. That the said answering defendants are ready and willing to redeem from the lien of the mortgage so much of the land as is claimed by them proportioned to the value of the whole, and that it is not just or equitable to impose upon them the payment of the entire indebtedness. That they deny for the reasons hereinbefore set forth that the complainant is entitled to foreclose the said Gato mortgage, but say that for said reasons the said Gato

mortgage was extinguished and all equity of redemption barred to the said Gato, and that the right of redemption and the mortgage were not revived in the said Gato or his assignee because of the failure of the complainant, George Lewis, to make these defendants parties to the foreclosure proceedings after the death of said Charles A. Murphy. Further answering, the defendants say that upon a proper, fair and equitable adjudication of the proportionate amount that these defendants' interest or holdings in the mortgaged premises should contribute to the satisfaction of said mortgage they stand ready and willing to pay the same; that they cannot tender any sum by reason of the fact that there has been no ascertainment of the proportionate value of the portions owned by them and of the portions owned by others all of which is collectively subject to the lien of the mortgage, and that said proportionate value should be ascertained before any decree of foreclosure is made; and that the right of said Gato to assign to the complainant the mortgage executed to him by the said Philbrick, and all the facts and circumstances attendant upon said assignment should be ascertained in conformity with the allegations of these answers.

To these separate answers the complainant filed separate but identical exceptions, as follows:

First. To that part of said answers alleging usury in the mortgage from Philbrick to Lewis, on the ground that there is no privity between said defendants and the said Philbrick, the original mortgagee, but they derived their title through a mortgage foreclosure sale, and that they are bound by the rule of caveat emptor, and that the master's sale at which they bought could give nothing but a title subject to the said mortgage of the said Lewis, which mortgage the subsequent mortgagor, W. J. H. Tay-

lor, had agreed to pay as a part of the purchase money for a part of the land described in the said Lewis mortgage, which part is now claimed by the defendants. That said defendants are not heirs, legatees or personal representatives of the said John J. Philbrick, but are strangers, as is shown by the pleadings, and cannot take advantage of any usury, if there was any, in the original mortgage, nor can they take advantage of any want of consideration for said mortgage. That this complainant by her purchase at the foreclosure sale in the cause of George Lewis against George W. Allen, administrator *de bonis non* of the estate of John J. Philbrick, deceased, acquired a title that relates back to the date of the mortgage, and the said defendant cannot take advantage of the date when this complainant acquired her title.

Second Exception. Challenges that part of said answers that assert that the note and mortgage given by John J. Philbrick to Eduardo H. Gato was without consideration, and that said note for $35,000, was given to said Gato to include the amount due to George Lewis, and that said Gato either paid a large sum to said Lewis, or for some reason unknown to the defendants failed and refused to pay the same, and that the said Philbrick only received a very small part of said $35,000, and that these defendants are informed and believe that at the time of the death of said Philbrick in the year 1897, a large part of the total sum of $35,000 mentioned in said note to said Gato had not been paid to said Lewis, and that the said Gato did not and never claimed that said Philbrick was indebted to him in the sum of $35,000. That complainant had said Gato note and mortgage assigned to her long after they became due, and she took the same subject to all the equities existing between the said Gato and the said Philbrick and the said Charles A. Murphy

after his purchase of said property, and that these defendants, claiming under the said Charles A. Murphy as sole owners of said property, are entitled to all the equities existing between the parties, and to full credits and deductions therefrom which they demand. This exception is on the ground that the pleadings show that Charles A. Murphy was a purchaser at a foreclosure sale of a mortgage made by W. J. H. Taylor, who had purchased a part of said real estate embraced in the original Lewis and Gato mortgages, and the said Taylor as a part of the purchase price for same had agreed in writing to pay the whole of the Lewis and Gato mortgages. That said Murphy at said sale acquired only the equity of redemption of the said Taylor, which equity was burdened with the payment of the whole aggregate amount of the two mortgages on the whole land. That neither of the said answering defendants had any privity with the said John J. Philbrick, the original mortgagor and owner of said land, nor they or either of them the heir, legatee or assignee or personal representative of the said Philbrick, and said defendants are not allowed to defend against the said Gato mortgage on the ground that it was made without consideration or on the ground of partial failure of consideration, if any there was, nor on the ground of usury therein, if any, and the said defendants cannot take advantage of the date when this complainant acquired title to said mortgage.

Third Exception. Challenges that part of said answers that allege that the said Gato was made a party defendant in the foreclosure suit to foreclose the senior mortgage of George Lewis, and that he was barred and foreclosed of all equity of redemption thereby. The exception is on the ground that complainant by virtue of said proceedings, sale and purchase, became vested of all the in-

terests of all those made parties to said proceedings. That she is the owner by legal subrogation of all the liens of all the parties to said cause. That the said answering defendants not having been made parties to said cause their interests are not affected directly or indirectly, and as to them the mortgage indebtedness of the said Philbrick to said Gato is still in force, and constitutes a lien upon said premises.

Fourth Exception. Challenges that part of said answers that allege in substance: That the said Gato having failed and refused to pay the amount of the decree of foreclosure of the senior mortgage of the said Lewis was under said decree forever barred of all equity of redemption, and his said mortgage thereby became extinguished and null and void, and that the complainant had full knowledge thereof, that with such knowledge, and with the purpose and intent to wrong, injure and defraud these defendants in the premises and to prevent them from redeeming said property for the amount of the Lewis foreclosure decree, persuaded and induced the said Gato for a nominal consideration which they are informed and believe did not exceed the sum of $2,000, to execute to her a pretended assignment of the mortgage and note executed to him by the said John J. Philbrick, said assignment and transfer and this after she had become the purchaser of said lands at the foreclosure sale under the Lewis decree and after she had taken a deed from the master under said foreclosure sale. That the purpose of the complainant was to prevent these defendants from redeeming said land for the amount of the Lewis decree of foreclosure, she well knowing that said property was not then or now worth the sum of the combined Gato and Lewis mortgages. This exception is on the ground that in so far as the answering defendants are concerned the

said mortgage of the said Gato remains a lien upon the mortgaged premises that they are neither the heirs lega- tees, assignees or personal representativs of the said John J. Philbrick and that there is no privity between them. That the title of said defendants is derived through Charles A. Murphy, deceased, who was a purchaser at a foreclosure sale of a mortgage made by W. J. H. Taylor, to the Laflins, and that the said Charles A. Murphy or the Key West Wharf and Coal Company were not parties to said cause of the foreclosure of said mortgage from said Taylor to said Laflins. Said Taylor having purchased a part of the proeprty embraced in the original Lewis and Gato mortgages, and who, as a part of the purchase price had agreed in writing to pay the whole of said Gato and Lewis mortgages. That the said Charles A. Murphy at said foreclosure sale acquired only the equity of redemp- tion of the said Taylor, which equity of redemption was burdened with the payment of the whole aggregate amount of the two mortgages covering the whole of said land, and the said defendants cannot be heard in a plea that its portion of the land is not worth the amount of the whole mortgage indebtedness in the whole land, as they have no eqiuty to have their part thereof relieved from the bur- den of the contract of its purchase.

Fifth Exception. Challenges that part of the said an- swers that allege in substance: That the portion of the land acquired by the said Charles A. Murphy as described in said bill, was and is not worth as much as the Lewis mortgage amounts to, and that this fact was well known to the complainant, and that her purpose in securing the pretended assignment of the Gato mortgage was to impose upon these defendants the payment of a sum aggregating far more than the value of the entire property and to

compel these defendants to pay not only the proportionate amount of the mortgage to the portion of the property owned by defendants, but the entire combined sum of both mortgages and interest, costs and attorneys' fees. This exception is based on the same ground as the preceding exception.

Sixth Exception. Challenges that part of the said answers that alleges that the defendants own only a part of the mortgaged premises and that the decree of foreclosure of the Lewis mortgage was faulty because it did not find the approximate value of each tract or parcel and the amount of the equity of redemption for each track proportioned between the separate owners thereof whereby these defendants could have been required to pay and could have paid their proportion of the amount due on the mortgage and not have been required to pay the entire sum due on the mortgage, although owning only a part of the mortgaged land. The exception is on the ground that neither of said defendants assert they were in any way parties to the said proceedings urged as an adjudication of their rights. That said foreclosure proceedings all transpired subsequent to the acquirement of the equity of redemption by the answering defendants. That the defendants are not privy to the said decree and are in no way affected or bound thereby. And by reason of the purchase by Charles A. Murphy, the grantor of the defendants at the foreclosure sale in the cause of the Laflins against said W. J. H. Taylor, the property that they claim is burdened with the entire mortgage indebtedness of the said Lewis and Gato, and it has no right in equity to have its land relieved from the burden of the contract of purchase. And because of the further ground that said defendants are not heirs, legatees, assignees or personal representatives of the original mortgagor, John J. Philbrick, nor is there

any privity between them and the said original mort-
gagor, and that they are strangers and that their title is
derived through a purchase at a mortgage foreclosure
sale and it is bound by the rule of *caveat emptor*. The
master's sale under said foreclosure could give nothing
but a title subject to he Lewis and Gato mortgages, which
the mortgagor, Taylor, had promised to pay as a part of
his purchase money.

Seventh Exception. Challenges that part of the an-
swers that allege that the defendants are willing and
ready to redeem from the lien of the mortgage so much
of the land as is claimed by them proportionate to the
value of the whole, and that it is not just and equitable
to impose upon them the payment of the entire indebted-
ness. That it denies for the reason hereinbefore set forth
that the complainant is entitled to foreclose the mortgage
executed by said John J. Philbrick to Eduardo H. Gato,
and alleges that by reason of the matters and things here-
inbefore set forth said mortgage was extinguished and all
equity of redemption barred to the said Gato, and that
the right of redemption and the mortgage were not revived
in the said Gato or his assigns because of the failure of the
complainant to make these defendants parties to said
foreclosure proceedings after the death of Charles A.
Murphy; and that upon a proper, fair and equitable adju-
dication of the proportionate amount that these defend-
ants' interests or holdings in the mortgaged premises
should contribute to the satisfaction of said mortgage
they stand ready and willing to pay the same; that they
cannot tender any sum by reason of the fact that there has
been no ascertainment of the proportionate value of the
portions owned by these defendants and of the portions
owned and claimed by others, all of which is collectively

subject to the lien of the mortgage, and that equity and good conscience require that such proportionate value should be ascertained before any decree of foreclosure is made; and that the rights of the said Eduardo H. Gato to assign to the complainant, Louisa Porter the mortgage executed by John J. Philbrick to him and all the facts and circumstances attendant upon the assignmnet and transfer should be ascertained in conformity with the allegations. of these answers herein set forth. This exception is on the ground that there is no privity between the said defendants and the original mortgagor John J. Philbrick. That their title or claim was derived through a purchase at a mortgage foreclosure sale and they are bound by the rule of *caveat emptor.* That the master's sale under said foreclosure could give nothing but a title subject to both the Lewis and Gato mortgages, which the mortgagor, Taylor, had promised to pay as a part of the purchase money for a part of the land embraced in the Lewis and Gato mortgages, which part is now claimed by the defendants. That the said defendants not being parties to the Lewis foreclosure proceedings their interests are not and were not affected directly or indirectly. That the said foreclosure proceedings being void as to the said defendants, it was as to them as if no foreclosure and sale had taken place, and said defendants acquired no additional rights than they originally had by reason of any matter or thing in said proceedings. And on the further ground except as to matters of accounting affirmative relief cannot be granted upon the facts stated in an answer.

The Eighth Exception is but a repetition to another part of said answers of the matters contained in the seventh exception above, and on the same grounds of exception.

The Ninth Exception challenges that part of said answers that pray the court to require, before making any decree, that an apportionment of the value of the part of the tract of land owned or claimed by these defendants be made, and that defendants may not be required to pay more than a proportionate part of the aggregate sum of said mortgage or mortgages as is required by equity, justice and good conscience. The exception is based on the ground that, except as to matter of accounting, affirmative relief cannot be granted upon facts stated in an answer.

The tenth, and last exception is a general one to the sufficiency of the said answers as a defense to the bill.

Upon argument of the pleas filed by the defendants they were overruled by the court. And the exceptions filed by the complainant to the answers of the defendants were sustained. For a review of these orders and of the prior order overruling the demurrers filed by the said defendants to the complainants bill of complaint, the said defendants have brought the cause to this court by appeal.

*Alex St. Clair-Abrams,* for Appellants;

*W. Hunt Harris,* for Appellee.

Taylor, J., (*after stating the facts.*)—There was no error in the order overruling the demurrers of the defendants to the bill. The demurrers were to the bill as a whole, The established rule here is that a general demurrer for want of equity will be overruled, if there is any ground for equitable relief stated in the bill, and this even if there are any number of grounds of special demurrer. Johnson v. McKinnon, 45 Fla. 388, 34 South. Rep. 272; Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754; Futch v.

Adams, 47 Fla. 257, 36 South Rep. 575; Lindsley v. McIver, 51 Fla. 463, 40 South. Rep. 619; Roberts v. Cypress Lake Naval Stores Co., 58 Fla. 514, 50 South Rep. 678; Holt v. Hillman-Sutherland Co., 56 Fla. 801, 47 South. Rep. 934; City of Orlando v. Equitable Building & Loan Ass'n. 45 Fla. 507, 33 South Rep. 986.

The complainant in this bill when she became the purchaser of the mortgaged property at the sale under the foreclosure decree of the Lewis mortgage for the full amount due upon such decree, when, for any reason, the foreclosure proceedings are void, thereby became subrogated to all the rights of the mortgagee Lewis in and to such mortgage and the indebtedness that it secured. She became thereby virtually an equitable assignee of such mortgage and of the debt that it secured, with all the rights of the original mortgagee. Burns v. Hiatt, 149 Cal. 617, 87 Pac. Rep. 196; McCague v. Eller, 77 Neb. 531, 110 N. W. Rep. 318, 124 Am. St. Rep. 863; Wiltsie on Mortgage Foreclosure, p. 148 and cases there cited, and p. 104, section 92. Becoming thus the equitable assignee of the Lewis mortgage she became entitled to an action *de novo* for the foreclosure thereof against all parties holding junior encumbrances or the legal title to any part of the mortgaged property, who had been omitted as parties to such original foreclosure proceedings under which she bought. Wiltsie on Mortgage Foreclosure, p. 104, section 92, and authorities there cited; Dodge v. Omaha & S. W. R. Co., 20 Neb. 276, 29 N. W. Rep. 936; Jordan v. Sayre, 24 Fla. 1, 3 South. Rep. 329, S. C. 29 Fla. 100, 10 South. Rep. 823. And having become the owner by assignment and transfer to her of the second mortgage made by the original mortgagor John J. Philbrick to Eduardo H. Gato as against these answering defendants she has the

right also to foreclose the Gato mortgage, and to do so in the same bill that she seeks to foreclose the Lewis mortgage.

Where a mortgagee holds two or more mortgages upon the same premises they should both be set out in the complaint and foreclosed in the same action, only one suit to foreclose both being proper. Wiltsie on Mortgage Foreclosure, p. 323, and authorities there cited; Pierce v. Balkam, 2 Cuch. (Mass.) 374. From what has been said it will be seen that there was abundant equity in the bill, and the court below correctly overruled the general demurrers thereto.

The defendants' pleas and the complainant's exceptions to the answers of the defendants present the question as to whether these defendants have the right to set up the defense of usury as to the Lewis mortgage; and the defense of a failure or want of consideration for the Gato mortgage. Charles A. Murphy, from and through whom both of the defending defendants derived their title and claim to a portion of the tract originally mortgaged to Lewis and Gato, derived his rights and title thereto by means of the purchase thereof at a Master's sale under a decree of foreclosure of mortgage in the Federal Court in favor of the Laflins against W. J. H. Taylor, who had purchased from the Laflins such portion of said tract, and who had, as a part of his purchase price for said property, expressly agreed to assume and to pay the said two mortgages to Lewis and Gato. It is well settled that a subsequent purchaser who expressly assumes the payment of prior existing mortgages upon property that he buys, as pat of the purchase price for such property, is estopped to defend against such mortgages either upon the ground of usury or on the ground

31—Vol. 63.

of failure or want of consideration therefor, or upon any other ground. Stuckey v. Middle States Loan & Building Construction Co., 61 West Va. 74, 55 S. E. Rep. 996, 123 Am. St. Rep. 977; Crawford v. Edwards, 33 Mich. 354; Miller v. Thompson, 34 Mich. 10; Parkinson v. Sherman, 74 N. Y. 88, 30 Am. Rep. 268; Clapp v. Halliday, 48 Ark. 258, 2 S. W. Rep. 853; Haile v. Nichols, 16 Hun. (N. Y.) 37; Green v. Houston, 22 Kan. 35; Johnson v. Parmely, 14 Hun. (N. Y.) 398; Pidgeon v. Trustee of Schools, 44 Ill. 501; McConihe v. Fales, 107 N. Y. 404, 14 N. E. Rep. 285; Gramer v. Lepper, 26 Ohio St. 59; Conover v. Hobart, 24 N. J. Eq. 120; Sellers v. Botsford, 11 Mich. 59; Cheney v. Dunlap, 27 Neb. 401, 43 N. W. Rep. 178, 5 L. R. A. 465; Alt v. Banholder, 36 Minn. 57, 29 N. W. Rep. 674; Stephens v. Muir, 8 Ind. 352; Hough v. Horsey, 36 Md. 181, 11 Am. Rep. 484; Burlington Mut. L. Ass'n v. Heider, 55 Iowa, 424, 5 N. W. Rep. 578; 7 N. W. Rep. 686; Trusdell v. Dowden, 47 N. J. Eq. 396, 20 Atl. Rep. 972; Nance v. Gregory, 6 Lea (Tenn.) 343, 40 Am. Rep. 41; 1 Jones on Mortgages, Secs. 744, 745; 3 Pomeroy's Eq. Juris. Sec. 1206; Tidball v. Schmeltz, 77 Kan. 440, 94 Pac. Rep. 794, 127 Am. St. Rep. 424. It is well settled also that a person claiming title under one who is estopped, will also be bound by the estoppel. Sikes v. Basnight, 2 Dev. & Bat, (N. C. Law) 157; Conkling v. Sesor Sewing Machine Co., 55 Howard's Prac. (N. Y.) 269; McGravey v. Remson, 19 Ala. 430; Kennedy v. Brown, 61 Ala. 296; Hasenritter v. Kirchhoffer, 79 Mo. 239. Under the rule last announced W. J. H. Taylor being estopped from contesting the Lewis and Gato mortgages on the ground of usury or upon any other ground touching the validity of said mortgages, Charles A. Murphy and the answering defendants who claim through him are likewise estopped from

contesting said mortgages on any or either of said grounds. The doctrine of estoppel applies with great force in this instance because the interest of W. J. H. Taylor in the land, that was purchased by Murphy at the foreclosure sale, was acquired by him, Taylor, upon the express consideration that he should pay the Lewis and Gato mortgages—and when Murphy bought Taylor's interest under the foreclosure of the mortgage made by Taylor to the Laflins he took such interest burdened with the estoppel resting upon Taylor to question the validity of said Lewis and Gato mortgages upon any ground whatsoever. There is no merit in the contention, coming as it does from these answering defendants, to the effect that the Gato mortgage became extinguished by the decree of foreclosure of the senior mortgage of George Lewis and the sale thereunder. This contention may have had some force as between Lewis and Gato in so far as their rights under the respective mortgages were concerned, but it has no force when applied to the status of the answering defendants herein; they were not parties to the proceedings for foreclosure of the Lewis mortgage and are in no way either directly or indirectly affected thereby. As to them and their rights and liabilities the case stands just as though said foreclosure proceedings of the Lewis mortgage had never been had. The Gato mortgage having been acquired by the complainant by purchase and she being subrogated to all the rights of George Lewis, she the complainant comes into this case as the owner of a first and second mortgage as against these answering defendants, both of which mortgages their interests in the mortgaged land is bound for, and in order to redeem such interests they will be compelled to pay the full amount of both mortgages. Neither is there any merit in the

contention of the defendants that there should be an ascertainment of the proportionate value of the portions of the land owned by them and that they be allowed to redeem from these two mortgages by paying the proportionate value of their respective portions thereof. Their portions of said land as well as all the residue of said mortgaged tract is bound for the payment of the whole of both mortgages, and the courts have no power to release any part of the land from the lien of the mortgages by affixing thereto a sum, less than the entire sum of the mortgages, which when paid shall release such part from the lien of the mortgages. To redeem their portions of the land from these two mortgages they will be required to pay the whole amount due upon both mortgages. McGough v. Sweetser, 97 Ala. 361, 12 South. Rep. 162; Martin v. Fridley, 23 Minn. 13; Evans v. Kahr, 60 Kan. 719, 57 Pac. Rep. 950; 58 Pac. Rep. 467.

We find no error in the record, and the orders appealed from are hereby affirmed at the cost of the appellants.

WHITFIELD, C. J. and SHACKLEFORD, COCKRELL and HOCKER, J. J., concur.